IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAQUAN L. TYLER,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. DLB-21-2777 |
| **WARDEN,** *et al.*, | * | |
| Defendants. | * | |

**MEMORANDUM**

Self-represented plaintiff DaQuan L. Tyler filed this civil rights action pursuant to 42 U.S.C. § 1983. ECF 1. He claims that, while he was incarcerated at Roxbury Correctional Institution ("RCI"), RCI employees Warden Denise Gelsinger, Security Chief Todd Faith, and Hagerstown/RCI Finance-Business Office Director Stacey Kretzer, the Department of Public Safety and Correctional Services ("DPSCS") Secretary and Commissioner (the "DPSCS defendants"), and the State of Maryland denied him access to the courts in violation of his constitutional rights under the First, Fifth, Sixth, and Fourteenth Amendments. ECF 1, at 8; *see* ECF 12-1.[1]

The defendants filed a motion to dismiss, or in the alternative, for summary judgment. ECF 12. The parties fully briefed the motion. ECF 22 & 23. A hearing is not necessary. *See* Loc. R.

---

[1] Tyler named "2018 Warden" in his complaint and then filed a motion to amend the complaint to name Denise Gelsinger, who was the Warden at RCI in 2018. ECF 21. Defendants do not object. ECF 23. Accordingly, Tyler's motion, ECF 21, is granted, and the Court analyzes Tyler's claims as to the former warden of RCI, Denise Gelsinger. In a second motion to amend the complaint, Tyler stated that the DPSCS defendants he intended to name were Stephen T. Moyer and Wayne Hill, the DPSCS Secretary and Commissioner in 2018. ECF 24. As explained in this memorandum opinion, Tyler has not stated a claim against any DPSCS secretary or commissioner. Therefore, his second motion to amend, ECF 24, is denied as futile.

105.6 (D. Md. 2021). For the following reasons, defendants' motion, treated as a motion to dismiss, is granted.

## I.   Background

After he was convicted of a felony in the Circuit Court for Montgomery County, Tyler filed a petition for writ of actual innocence, and when it was denied, he appealed to the Maryland Court of Special Appeals. *Tyler v. Maryland*, No. 2026 (Md. Ct. Spec. App.); https://casesearch. courts.state.md.us/casesearch/inquiryDetail.jis?caseId=122557C&loc=68&detailLoc=ODYCRI M (state court docket for *Maryland v. Tyler*, Case No. 122557C (Cir. Ct. Montgomery Cnty.)); https://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=123131C&loc=68&det ailLoc=ODYCRIM (state court docket for *Maryland v. Tyler*, Case No. 123131C (Cir. Ct. Montgomery Cnty.)).[2] He asked the appellate court for an extension of time to file a brief and the transcripts from the circuit court hearing on his petition, both of which are required under the Maryland Rules. Md. R. 8-413(a) (stating "[t]he record on appeal shall include (1) a certified copy of the docket entries in the lower court, (2) the transcript required by Rule 8-411, and (3) all original papers filed in the action in the lower court . . ."); Md. R. 8-411 (requiring filing of relevant transcript for appeal); ECF 12-3 (Order in *Tyler*, No. 2026 (Md. Ct. Spec. App. Aug. 10, 2018)); ECF 1, at 4. On April 24, 2018, the Court of Special Appeals granted his request and set a June 19, 2018 deadline for filing a brief. *Id.* Tyler asked the court for a second extension on May 2,

---

[2] During the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment that changed the name of the Court of Appeals of Maryland to the Supreme Court of Maryland, and name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. Although the name changes took effect on December 14, 2022, for clarity and consistency with the pleadings, this Court will utilize the original names and citations in this memorandum opinion.

2018, so that he would have time "to obtain new copies of transcripts to prepare his brief." *Id.* On May 22, 2018, the court granted his request and extended the deadline to July 27, 2018. *Id.*

On June 21, 2018, Tyler gave Correctional Officer W. Webb a letter and a $40.00 money voucher for the finance department to cut a check, so that the letter and check could be mailed to the Circuit Court for Montgomery County to purchase the transcripts. ECF 1, at 4. Tyler alleges that, by handing over his letter and money voucher on June 21 for processing and mailing, he "planned on receiving these transcripts . . . and having them sent out by mail in a timely fashion well before his July 27, 2018 appeal deadline." *Id.* He alleges the voucher was not processed and a check was not sent because "the Hagerstown/R.C.I. prison finance–business office [was] installing an unannounced new banking system in June and [most of] of July of 2018" and "were not sending inmate funds for that time period." *Id.* Correctional Case Management Supervisor Maureen Reid acknowledged that "[d]ue to a delay in the Finance Department his check was not processed." ECF 1-1, at 4; *see id.* at 3. He claims he did not know there would be any delay sending a check because RCI had not published a "Institutional Bulletin or Memorandum" to inform inmates checks would be delayed. ECF 1, at 4. And he claims that, because his voucher was not processed promptly and a check was not sent until "months later," he could not file the transcripts by the deadline. *Id.*

On August 10, 2018, the Court of Special Appeals ordered "*sua sponte* that [Tyler's] appeal be . . . dismissed pursuant to Md. Rules 8-602(c)(4) and 8-413(a) for [Tyler's] failure to file the relevant transcript(s), and pursuant to Md. Rule 8-602(c)(5) for [Tyler's] failure to file briefs." ECF 12-3.

Following the dismissal, Tyler "wrote to the Finance–Business Office" on August 20, 2018, and "filed informal complaints/inmate request forms/Administrative Remedy forms to

R.C.I. Warden, Security Chief, Finance–Business Office" to try to address the issue. ECF 1, at 6. In an August 20, 2018 inmate request form, Tyler asked for "some type of confirmation showing the R.C.I. finance [office] was switching banks in May and June of this year causing a delay in all outgoing inmate funds." ECF 1-1, at 3. The unsigned response confirmed that the prison was "unable to cut checks for inmates" in June and most of July. *Id*. In an October 19, 2018 inmate request form, Tyler asked for confirmation that inmates were informed that "the Finance–Business Office was swit[]ching banks," and the illegibly signed response stated: "The Finance–Business office did not switch banks this year (2018) so there will be no bulletin to send out." *Id*. at 2. In an October 23, 2018 inmate request form, Tyler asked why inmates were not informed "that the Finance–Business Office would be installing a new banking system in the months of June and . . . July." ECF 1-1, at 1. Warden Gelsinger's October 25, 2018 signed response stated that "inmates were made aware via ITV and several meetings with the Communication Committee." *Id*.

On November 8, 2018, Reid wrote a letter to inform Chief Judge Woodward of the Maryland Court of Special Appeals that "Mr. Tyler submitted a request for a check to be processed to Montgomery County Circuit Court for the purpose of ordering his transcripts. Due to a delay in the Finance Department his check was not processed." *Id.* at 4.

## II.     Standard of Review

Defendants move to dismiss the complaint for failure to state a claim or alternatively for summary judgment. The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed.

R. Evid. 201(b)(2).  The Court considers the allegations in the complaint and the Maryland Court of Special Appeals' dismissal order, which is attached to the motion to dismiss.

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)).  To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court.  *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A plausible claim is more than merely conceivable or speculative.  *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022).  The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)).  But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory.  *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader.  *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022).  But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)).  Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard."  *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)).  On a Rule 12(b)(6) motion, the Court "does not resolve

contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

### III. Discussion

The defendants argue that Tyler has failed to state a claim under 42 U.S.C. § 1983 for a violation of his constitutional rights, or alternatively, that they are entitled to summary judgment because Tyler was not denied access to the courts. ECF 12-1. Further, they argue that they are entitled to qualified immunity. *Id*.

#### A. Eleventh Amendment Immunity

Tyler has named the State of Maryland as a defendant. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and its departments are immune from suits in federal court brought by its citizens or the citizens of another state unless the state consents. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland

has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court.

In addition to consent, there are two other exceptions to Eleventh Amendment immunity: (1) when it is abrogated by Congress; and (2) when the plaintiff seeks "prospective injunctive relief against state officials acting in violation of federal law." *See Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)). The first exception, abrogation by Congress, does not apply here. Congress did not abrogate Eleventh Amendment immunity for § 1983 claims in federal court. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The second exception also does not apply because Tyler does not seek prospective injunctive relief.

Tyler's claims against the State of Maryland are barred by the Eleventh Amendment and are dismissed.

### B. 42 U.S.C. § 1983

Under Section 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).

Prisoners have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977), and narrowing the holding in *Bounds*). A prisoner's constitutional right of access to the courts is protected so long as they are afforded a "reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id.* at 356. This right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id*. To state a claim for denial of access to courts, a plaintiff must allege "'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355); *see Lewis*, 518 U.S. at 351–52. That is, the plaintiff must allege that the defendants "frustrated or . . . impeded" a "nonfrivolous legal claim." *Lewis*, 518 U.S. at 353.

The defendant's own action—or failure to act—is required for liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no *respondeat superior* liability under § 1983. *Love-Lane*, 355 F.3d at 782. Officials like defendants may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).

To state a claim for supervisor liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was

8

"an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Tyler does not allege that any of the defendants personally took any action that prevented him from timely filing his brief or transcripts with the Maryland Court of Appeals. He does not mention either the DPSCS Secretary or the DPSCS Commissioner of Corrections anywhere in the factual allegations of the complaint. As for Warden Denise Gelsinger, Security Chief Todd Faith, and Business-Finance Office Director Stacey Kretzer, Tyler alleges that he "wrote the business–finance office" and that he "filed informal complaints/inmate request forms/Administrative Remedy forms to R.C.I. Warden, Security Chief, Business-Finance office." ECF 1, at 6. These events happened after the Court of Special Appeals dismissed his appeal and therefore could not have contributed to the dismissal or alleged denial of access to the courts. Tyler argues at length in his opposition that the Warden and the Business-Finance Office Director were personally responsible for his denial of access to the courts because he was not informed that his check would be delayed by the prison's inability to process the voucher. But nowhere in his complaint does he allege that these defendants were responsible for ensuring that he or the prison population in general was informed of the possible delay and that their personal failure to ensure that he knew that checks would be delayed "frustrated" his ability to pursue his appeal. *See Lewis*, 518 U.S. at 353. Additionally, Tyler has not alleged any action by a subordinate on which supervisor liability could be based. Nor has he alleged that any defendant knew that their subordinate's conduct posed an unreasonable risk of depriving him of access to the courts. Ultimately, he fails to allege the defendants' personal involvement in denying him access to the courts.

Even if Tyler had alleged a defendant's personal responsibility for the challenged actions, he nevertheless has failed to state a claim for denial of access to the courts. He does not allege that the defendants' actions or inactions hindered his ability to pursue his claims. On the contrary, the allegations and court order show that Tyler was on notice as early as April 24, 2018 that he needed to file his brief and the transcripts to pursue his appeal in the Court of Special Appeals. ECF 12-3. Yet he did not submit a check voucher for the transcripts until two months later, on June 21, 2018, less than six weeks from the deadline. ECF 1, at 4. Indeed, he insists that his "brief was already done" and that he did not file his brief without the transcripts because Maryland Rule 8-413(a) required that "[a]ll of the record on appeal shall be filed together at once." ECF 22, at 10, 12. The rule does not, however, require the simultaneous filing of briefs and transcripts. It simply requires that "[t]he record on appeal . . . include (1) a certified copy of the docket entries in the lower court, (2) the transcript required by Rule 8-411, and (3) all original papers filed in the action in the lower court." Md. R. 8-413(a). Tyler does not allege that the defendants prevented him from submitting his check voucher for transcripts sooner or filing his brief on time and explaining to the Court of Special Appeals that he attempted to obtain transcripts but had not received them yet. Thus, he has not alleged that the defendants' actions or inactions hindered his ability to pursue his claims.

Tyler also does not allege actual injury to his capability of appealing his conviction. To state a claim for denial of access to the courts, "[a] prisoner must . . . identify an actual injury *resulting from* official conduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (emphasis added) (citing *Strickler v. Waters*, 989 F.2d 1375, 1382–85 (4th Cir. 1993)); *see also Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir. 2015) (noting "a prisoner must demonstrate that he suffered an actual injury, such as missing a court-imposed deadline or being unable to file a

complaint *because of* the Defendants' actions" (emphasis added) (citing *Lewis*, 518 U.S. at 351–52)). The Court of Special Appeals dismissed Tyler's appeal because of his "failure to file briefs," not only because he did not file transcripts. Even under Tyler's view of the facts, he, not the defendants, was responsible for not timely filing a brief. Thus, Tyler has not alleged that the "actual injury" of dismissal "resulted from official conduct." *See Cochran*, 73 F.3d at 1317.

Tyler has not stated a constitutional claim against the defendants for denial of access to the courts.

### IV. Motion to Appoint Counsel

On December 19, 2022, Tyler filed a motion to appoint counsel. ECF 25. In support of his request, he states that he cannot afford counsel, he has limited knowledge of the law and limited access to the law library, the issues pending are complicated, and RCI staff improperly opens and tampers with inmate mail. *Id*. at 1–2.

In civil cases, a federal district court judge has the discretion under 28 U.S.C. § 1915(e)(1) to appoint counsel, but only if an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). "Courts consider 'the type and complexity of the case,' whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim." *Giddings v. Montgomery Cnty.*, No. GJH-21-959, 2021 WL 5921382, at *1 (D. Md. Dec. 15, 2021) (quoting *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989)), *aff'd sub nom. Giddings v. Montgomery Cnty., Md.*, No. 22-6057, 2022 WL 1284296 (4th Cir. Apr. 29, 2022)

In his motion, Tyler does not identify any exceptional circumstances for appointment of counsel, and he does not state a cognizable claim. His request for appointment of counsel is denied.

11

## V.     Conclusion

Tyler's first motion to amend (ECF 21) is granted.  Tyler's second motion to amend (ECF 24) is denied as futile.  Tyler's motion to appoint counsel (ECF 25) is denied.  Defendants' motion to dismiss (ECF 12) is granted.  A separate order follows.

<u>February 23, 2023</u>
Date

_____
Deborah L. Boardman
United States District Judge